UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| v. | * |
| | * Criminal No. 14-30036-MGM |
| HECTOR GOMEZ, | * |
| | * |
| Defendant. | * |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO SUPPRESS
(Dkt. No. 44)

May 18, 2015

MASTROIANNI, U.S.D.J.

Between November 2013 and August 2014 there was a law enforcement investigation of drug sales in a particular area of Holyoke. A cooperating witness ("CW") was used to make purchases of drugs during this investigation. The government has alleged that on July 23, 2014 the Defendant, Hector Gomez, sold heroin to the CW. This was just one of multiple purchases made by the CW during the period of the investigation. On September 10, 2014, an identification procedure took place during which the CW viewed numerous sets of photos as part of the law enforcement effort to make identifications in connection with the drug purchases made by the CW. Relative to Defendant's case, the CW was shown a series of six photographs all at once. At the hearing on this motion, a color copy of each of the six photographs was introduced as Exhibit G. The photo procedure was conducted by law enforcement officers who knew Defendant to be the suspect. Defendant asserts the array was suggestive because the other photographs had very little resemblance to him.

Of those shown in the six pictures, only Defendant and one other individual are bald, only Defendant's photo had a blue background, only Defendant and one other individual (who was not bald) were wearing white t-shirts, and only Defendant and one other individual are clearly and

immediately identifiable as black males. Each of the individuals in the photographs do appear to be generally the same age; however, they do not have similar facial characteristics. The photos were not put together in a way to avoid Defendant standing out to some degree. Despite this, the CW made no identification after viewing the photographs. Accordingly, the court finds the photo procedure did not produce an identification based on suggestive factors.

The CW had viewed five prior photo arrays before looking at the photographs which included Defendant. In each of those previous procedures, the CW did make an identification of the person from whom the CW purchased drugs. Based on those previous identifications, Defendant argues, the CW would have known the police suspect was among the photos in the array that included Defendant's picture. Building on this argument, Defendant asserts that any in-court identification, which may be made by the CW at trial, would be the result of the pretrial photo procedure that failed to produce an identification. Defendant asserts the procedure was impermissibly suggestive and, therefore, requests the Court preclude the CW from identifying Defendant in court during the trial.

Defendant's motion, as it relates to precluding any identification by the CW at trial, is denied. The request must be viewed as speculative and based on an assumption the CW will identify Defendant at trial. Certainly, if the defense is anticipating that the CW will make an identification at trial, there are grounds for extensive cross-examination based on what occurred during the pretrial photo procedure. The prior failure of the CW to identify Defendant is not a basis for excluding possible identification testimony during trial; such prior failure would go to the weight to be accorded to any identification testimony, rather than its admissibility. See, e.g. United States v. Hamilton, 684 F.2d 380, 383 (6th Cir. 1982) (cert. denied); United States v. Causey, 834 F.2d 1277, 1286 (6th Cir. 1987)(cert. denied); Millender v. Adams, 187 F. Supp. 2d 852, 868 (E.D. Mich. 2002).

The standard of review for an identification situation where the photo was selected is not applicable here. However, that process involves an analysis to determine if the procedure, resulting in the identification, was impermissibly suggestive. Then, if it is determined the procedure was impermissibly suggestive, a determination is made as to whether, under the totality of the circumstances, the identification was nevertheless reliable. <u>United States v. Arthur</u>, 764 F.3d 92, 99 (1st Cir. 2014). Based on the evidence available, this court, obviously mindful of the failure to identify, finds the procedure was far from perfect, but was not impermissibly suggestive. It simply does not follow that, under any analysis, the court should preclude any identification-related inquiry at trial. <u>See</u> <u>Manson v. Braithwaite</u>, 432 U.S. 98, 116 (1977) ("Short of ['a very substantial likelihood of irreparable identification'], such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.").

Defendant also challenges the identifications made by three law enforcement officers. Each officer identified Defendant as the individual who made the sale to the CW on July 23, 2014 after viewing the video recording of the sale. The three law-enforcement officers involved are former Hampden County Sherriff's Office Sergeant Jessica Athas ("Athas"), Holyoke Police Department Detective William Delgado ("Delgado"), and Springfield Police Department Sergeant Misael Rodriguez ("Rodriguez").

<u>Athas Identification</u>

The government indicates no evidence of her identification will be offered and it will not be calling her as a witness. Accordingly, Defendant's motion to suppress will be allowed as to any identification by Athas. The court also notes, had Athas not been withdrawn from the witness list, she would have been precluded from testifying about her identification of Defendant as a person

3

who sold drugs to the CW because her identification was based only on her review of the video recording of the sale and her prior knowledge of Defendant. Given the relatively short time between the event and trial, the availability of a high quality video of the alleged drug sale, and the fact the seller appears in the video without a disguise and identifiable characteristics are not concealed, the question of whether the seller in the video is Defendant is for the jury to decide.

      Rodriguez Identification

      The government also will not be permitted to rely on the identification made by Rodriguez for the reasons stated in the discussion regarding Athas. Considering the circumstances of this case, as previously noted, were the court to allow an identification by Rodriguez, it would intrude upon the jury's ultimate role in this case relative to identification. Rodriguez was not at the scene to directly witness the alleged drug sales. When he watched the video of the alleged drug sale, Rodriguez identified Defendant based upon his prior familiarity with Defendant.

      Several months before the alleged drug sale in this case, Rodriguez had met Defendant at a hospital where Defendant was reported to have arrived with gunshot wounds. There is a separate video of Defendant in the hospital lobby area from that day which shows unique tattoos on the person who had arrived at the hospital. Rodriguez went to the hospital to investigate the person who had arrived with gunshot wounds and, according to the offer made by the government, he was able to identify that person as Defendant. While at the hospital, Rodriguez spoke with Defendant and Defendant gave Rodriguez his phone number, presumably so the police could contact him for any necessary follow-up.

      Though the identification by Rodriguez will not be permitted, the Government will be allowed to introduce certain testimony and evidence from him. The video from the hospital lobby together with the testimony of Rodriguez identifying Defendant as the person shown in that video will be allowed, provided a preliminary showing is made by the government that the tattoo(s)

depicted in the hospital video are, arguably, the same tattoo(s) depicted in the video of the person making the drug sale; the standard for determining relevance of evidence under Rule 401 must be met. Rodriguez will not be allowed to make an identification of the individual whom he believes made the drug sale or make any comment comparing any tattoo from the hospital video with tattoos in the drug sale video. A tattoo is considered a unique identifiable feature and it will remain as a piece of evidence for the jury to consider. See United States v. Greer, 631 F.3d 608, 612 (2011). (ruling a tattoo used solely to identify an individual is physical evidence).

Delgado Identification

Delgado made his identification after he was shown the video of the alleged sale on July 23, 2014 and was given a copy of Defendant's registry of motor vehicles photograph. This identification will be suppressed for the reasons discussed relative to Athas and Rodriguez and also because of the use of a single photograph to impermissibly suggest identification. The court finds no evidence that Delgado actually viewed the sale; instead, his identification was based on his review of the video afterwards. As a result, it is difficult to apply the reliability factors used after an identification has been deemed to be impermissibly suggestive to determine whether the identification was, nevertheless, reliable. Those reliability factors start with a review of a witness's opportunity to view the individual at the time of the crime. The court does not find this consideration is meant to apply to viewing the crime on video after it has occurred. Similarly, because Delgado viewed a video, he could not have made any type of description of the perpetrator as he was watching the actual crime unfold, nor could he demonstrate any certainty about identity because he was holding a registry of motor vehicles photograph given to him by law enforcement when he made his initial identification. Thus, any in-court identification by Delgado would not be reliable.

Courts evaluate the due process admissibility of identification evidence using a two-step process. "First, the court must ask whether the identification procedure was impermissibly

5

suggestive. If not, the inquiry ends. But if impermissible suggestiveness is found, the second step . . . requires the court to appraise the totality of the circumstances and decide whether the identification was nevertheless reliable." Arthur, 764 F.3d at 99-100 (citation omitted). In particular,

> [c]ourts typically employ five factors to aid in assessing reliability under the totality of the circumstances. These factors are "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the level of certainty demonstrated by the witness at the confrontation; (5) the length of time between the crime and the confrontation."

Id.

"Several courts have analyzed the suggestibility of an identification procedure used for a police officer witness like 'that of a normal witness.'" United States v. Nava-Ruiz, 515 F. Supp. 2d 198, 203 (D. Mass. 2007) (quoting United States v. Smith, 429 F. Supp. 2d 440, 448 (D. Mass. 2006)). Single-photo identification procedures are almost universally recognized as questionable. See, e.g., Smith, 429 F. Supp. 2d at 450 ("It is axiomatic that identifications achieved through the use of a single photo are highly problematic. A single photo shown to an eyewitness (the proverbial 'Is this the man you saw?' question) plainly suggests the guilt of the person pictured. As the First Circuit has commented, '[s]ingle photo identifications do, indeed, present so serious a danger of suggestiveness as to require that they be given extremely careful scrutiny . . . .'" (quoting Nassar v. Vinzant, 519 F.2d 798, 801 (1st Cir. 1975)). Such procedures are even more questionable when the witness knows that the police hold a strong belief that the photo shows the perpetrator. Cf. id.

For the Foregoing reasons, the motion to suppress is hereby DENIED in part and ALLOWED in part.

It is So Ordered.

    /s/ Mark G. Mastroianni  
    MARK G. MASTROIANNI  
    United States District Judge